IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HALEY ADAMS,**

    **Plaintiff,**

**v.**

**HYMAN BROS. OF MIDLOTHIAN, INC.**

    **Defendant.**

CASE NO.: __20-cv-742__

JURY TRIAL DEMANDED

## COMPLAINT

For her Complaint, Haley Adams, by counsel, states as follows against Hyman Bros. of Midlothian, Inc. ("Hyman Brothers"):

## NATURE OF THE CASE

1. This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"). Defendant Hyman Brothers discriminated against the Plaintiff because of her gender by subjecting her to unlawful sexual harassment, retaliating against her and constructively discharging her.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. §2000e(5) (jurisdiction over cases filed under Title VII); 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1337 (jurisdiction arising from Congressional regulation of commerce).

3. The employment practices hereafter alleged to be unlawful were committed within the Eastern District of Virginia, more specifically, in the County of Chesterfield. Accordingly, venue in this judicial district is proper.

## PARTIES

4. Haley Adams is a resident and citizen of the Commonwealth of Virginia and the United States. She maintains her principal residence at 10839 Bethany Ridge Road, Chesterfield, Virginia 23236.

5. Hyman Brothers is a Virginia corporation and conducts business throughout central Virginia. It maintains its principal place of business at 11650 Midlothian Turnpike, Midlothian, Virginia 23113.

6. At all times relevant to this action, Plaintiff was an "employee" of Hyman Brothers as that term is defined under Title VII.

## ADMINISTRATIVE PREREQUISITES

7. Plaintiff has met all administrative prerequisites to filing this action, including the filing of a timely Charge of Discrimination with the EEOC and bringing this action within 90 days of the issuance of the Notice of Right to Sue that she received from the EEOC.

## FACTS

8. Hyman Brothers hired Adams in April of 2016. She was 21 years of age at the time. At the time of her termination of employment she was employed by Hyman Brothers in the position of service advisor.

9. Plaintiff was subjected to unlawful sexual harassment by Edward Phillips, her immediate supervisor, and Thomas Hyman, who is a senior executive with Hyman Brothers. Both men are significantly older than Haley.

10. At all times relevant to this matter, Plaintiff executed her duties with Hyman Brothers in a manner that exceeded the company's expectations. She always performed her

duties with Hyman Brothers well. As of the time of her termination in December of 2018, she earned in excess of $71,000 per year.

11. Any reasonable assessment of Plaintiff's abilities would reveal a capable and smart young woman who took great initiative in learning all aspects of the car business. In April of 2016, Plaintiff began working for Phillips in the used car division for several months. During this time, she experienced sexual harassment and sexual advances by Phillips.

12. Adams' work assignments were then changed and she was not subjected to Phillips for a period of time.

13. In November of 2017, Phillips came to Adams, told her that he needed a service advisor immediately and wanted her in the position. This mean working under Phillips. Adams told Phillips that she was not going back to his department if the sexual harassment and advances continued. Phillips assured Adams that he would keep things professional and that Adams would not be subjected to any sexual harassment. He also promised that he would significantly increase her salary.

14. Believing that Phillips would act appropriately, Adams went back to work for Phillips. It was only a short time after this transfer that Phillips began sexually harassing Adams.

15. In the summer of 2016, Adams and Hyman dated consensually for several weeks before Adams ended the relationship. Hyman was very aggressive in the relationship in making demands upon Adams. When Adams talked about ending the relationship, Hyman threatened to take her car and job away from her.

16. Adams' work environment at Hyman Brothers had always been laden with inappropriate sexual comments and, at times, unwanted and offensive touching. Phillips and Hyman would regularly drink alcohol during the work day. Phillips would talk about sexual

3

topics, the appearance of various women, Adams' appearance, etc. Phillips' sexual banter was pervasive and often graphic.

17. On one occasion, Phillips invited Adams to the Mitsubishi building across the street, telling her that there was a sauna there. It became clear to Adams that his intent was sexual in nature. Phillips would engage in unwanted and offensive touching of Adams including attempting to kiss her, rub her leg, touch her hair, etc. When Phillips attempted to kiss Adams, she always refused and would have to pull away from him.

18. Phillips would constantly comment on Adams' appearance saying such things as, "oh, I like those jeans", "you look pretty today" and would make noises like "Mmmm" while looking her up and down. Phillips would also comment on Adams' rear-end and body. He would ask her where her white pants were saying "they are my favorite" and comment on how the pants fit. Phillips would also ask Adams to put her hair down so that she would "look more [his] age".

19. Phillips would make advances upon Adams saying that he wanted to "hook up" with her and asking her out; he would tell her that he loved her and that "you and I both know it would be so good".

20. Several times per month, Phillips would join other men in the service group talking about Adams and her appearance. She would sometimes overhear this.

21. Phillips would at times ask Adams to go out with him and to have drinks with him. On one occasion, Phillips insisted that Adams go to lunch with him. He had her drive him to a liquor store and bar where he became intoxicated and asked Adams to kiss him. When she refused, he tried forcefully to kiss her. He also acted like he was going to playfully punch her

and touched her breast. During this "lunch," Phillips also talked about cheating on his wife and having sex with another employee.

22. Phillips would also talk and inquire about Adams' sex life and he would ask her why she was intimate with Hyman in the past and "why him and not me".

23. On one occasion, Phillips was intoxicated in the office and called a customer while making gestures as if he were masturbating while on the phone with the customer.

24. Phillips pinned Adams up against a wall and touched her offensively while Hyman stood by.

25. Phillips also frequently said to Adams things like (and these are merely examples):

    a. You are so beautiful, I want to punch you in the face;

    b. "I need a girl. That is what I need";

    c. I like to f---. I like a girl's company just as much";

    d. "We could be lovers. I think we can have fun";

    e. You f---ing are idiots [referring to women]. I love you all. But I did give you all respect the way you all f---ing carry it. It's so f---ing wild.;

    f. "I f---ing love you. You f---ing cute little f---er";

    g. "F---. You are so pretty;

    h. "Hey come here. Kiss me";

    i. "I don't think you get it. You are so f---ing pretty but you have got like 2 or 3 obstacles to get right off and then you are perfect"; and

      j.      On one occasion during a birthday celebration for Adams at work, Phillips stuck his finger in Adams' birthday cake, put it in her face and told her to lick it off.

26.    In committing the acts set forth herein, Hyman Brothers deliberately discriminated against Adams because of her gender, and subjected her to a hostile work environment because she is a female. The actions complained of herein had the effect of altering, in a significantly adverse way, the terms and conditions of Adams' employment with Hyman Brothers.

27.    In addition to experiencing degrading and humiliating sexual harassment, Adams was constructively discharged by Hyman Brothers and her career there was destroyed. The conditions became intolerable to Adams and she left her employment at Hyman. She was terminated because of her refusal to accede to the working conditions imposed upon her. The creation of these conditions was intended by Hyman to create a hostile and intolerable work environment.

28.    As a direct, actual and proximate result of the conduct of the Defendant, Adams has suffered significant economic harm including loss of back pay, front pay and benefits. In addition, she has suffered non-economic damages including humiliation, anxiety, pain, loss of sleep, depression, mental anguish and loss of quality and enjoyment of life.

## COUNT I

### *Sexual Harassment in Violation of Title VII*

29.    The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

30. The conduct to which Adams was subjected was unwelcomed. The sexual harassment to which Adams was subjected was constant, pervasive, and created a hostile work environment. At all times relevant hereto, Adams resisted the improper conduct to the best of her ability.

31. The Defendants' conduct, and their failure to stop Phillips' actions, clearly demonstrated that submission to sexual harassment at Hyman Brothers was both an explicit and implicit condition of employment. As a result of Adams' refusal to accede to the sexual harassment, and the treatment by Phillips in general, her career with Hyman Brothers was destroyed and she suffered significant harm.

32. Hyman Brothers' conduct in allowing the sexual harassment to occur was outrageous, intentional, willful and malicious and Adams has suffered significant harm as a result, including significant economic and non-economic damages for which Hyman Brothers is liable. As a direct, actual and proximate result of the Defendant's conduct, Adams has sustained economic damages including loss of back pay, loss of front pay and benefits. In addition, she has suffered significant non-economic damages for which Hyman Brothers is liable including humiliation, anxiety, pain, mental anguish, loss of sleep, depression and loss of quality and enjoyment of life.

## COUNT II

### *Constructive Discharge in Violation of Title VII*

33. The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

34. Adams was subjected to assault and battery throughout her employment with Hyman Brothers. In addition, she was subjected to intolerable and outrageous acts of sexual

harassment. Adams realized that she must, as a practical matter, accept the working conditions to which she was subjected or terminate her employment. Adams found the conditions of her employment to be intolerable, and any reasonable woman in her position would have found it intolerable, and she had no choice but to resign.

35. The Defendant's discharge of Adams under these conditions was outrageous, intentional and malicious, and Adams has suffered significant harm as a result, including significant economic and non-economic damages, for which the Defendant is liable.

## COUNT III

### *Assault and Battery*

36. The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

37. The unlawful and unwelcomed touchings to which Adams was subjected constitute assault and battery under Virginia law.

38. Adams was subjected to several acts of assault and battery as described in paragraphs 17, 21 and 24, above.

39. The Defendant's assault and battery against Adams as set forth above was outrageous, intentional, willful, and malicious, and Adams suffered significant harm as a result, including physical pain, emotional pain, mental anguish, anxiety, humiliation, loss of quality of life and other suffering for which the Defendant is liable.

**WHEREFORE**, Haley Adams, for all Counts set forth herein, respectfully prays that this Court:

1) Order the Defendant to institute and carry out policies, practices and programs to provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present unlawful employment practices;

2) Order the Defendant to make the Plaintiff whole with appropriate lost earnings, future lost earnings, and compensation for loss of future pensions and benefits in amounts to be proved at trial, with pre-judgment and post-judgment interest as applicable;

3) Order the Defendant to make the Plaintiff whole by providing her with all compensation to which she is entitled under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a), for non-economic losses including, without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, depression, loss of sleep and loss of quality and enjoyment of life in amounts to be proved at trial, with pre-judgment and post-judgment interest as applicable;

4) Order the Defendant to pay the Plaintiff punitive damages in amounts to be proved at trial and which are sufficient to prevent this conduct in the future, with pre-judgment and post-judgment interest as applicable;

5) Order the Defendant to pay Plaintiff's reasonable attorney's fees, expert fees and all costs incurred in bringing and prosecuting this action with pre-judgment and post-judgment interest as applicable; and

6) All other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues raised in this Complaint.

        Respectfully submitted,

        **HALEY ADAMS**


        By: */s/ James H. Shoemaker, Jr.*
            Of Counsel


James H. Shoemaker, Jr., VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com

Cindra Dowd, VSB No. 33819
Richard J. Serpe, VSB No. 33340
Law Offices of Richard J. Serpe, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, Virginia 23510-2322
Telephone: (757) 233-0009
Facsimile: (757) 233-0455
rserpe@serpefirm.com
cdowd@serpefirm.com